IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| CHRISTOPHER JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06-cv-4638-RBP-TMP |
| ) | |
| OFFICER JOHN MEADOWS, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

This cause is before the court on the defendant's special report, filed May 29, 2007, which has been treated as motion for summary judgment. (Doc. 14). The sole remaining claim in this action is the allegation by the plaintiff that his Eighth Amendment right to be free from excessive force was violated by defendant John Meadows during a confrontation that occurred on October 19, 2006. All other claims and defendants were dismissed from the action by the court's earlier order of March 20, 2007 (Doc. 11).

Plaintiff, Christopher Jackson, filed this pro se action pursuant to 42 U.S.C. § 1983, alleging that he was deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America. He alleges that the defendant used excessive force against him on October 19, 2006, at the St. Clair Correctional Facility. He seeks compensatory and punitive damages. On March 29, 2007, a magistrate judge of the court entered an Order for Special Report directing that a copy of the complaint in this action be forwarded to the defendant and requesting that he file a special report addressing the factual allegations of the plaintiff's complaint. The parties were advised that the special report, if appropriate, might be considered as a motion for summary

judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. On May 29, 2007, the defendant filed a special report accompanied by his own affidavit and certain institutional records from the St. Clair Correctional Faciliy. (Doc. 14). The plaintiff filed a response to the defendant's special report on July 13, 2007. (Doc. 17). On July 22, 2008, the parties were notified that the court would construe the defendant's special report as a motion for summary judgment and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose. The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed a response to the defendant's motion on August 25, 2008. (Doc. 19). This matter is now before the court on the defendant's motion for summary judgment and the plaintiff's responses thereto.

## SUMMARY JUDGMENT STANDARD

Because the special report of the defendant is being considered a motion for summary judgment, the Court must determine whether the moving party, the defendant, is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56*. In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not

merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## SUMMARY JUDGMENT FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the plaintiff. On October 19, 2006, the plaintiff had reported to his assigned duties in the kitchen of the St. Clair Correctional Facility and was standing in a crowd in the hallway that connects the side entrance and the kitchen. He was approached by defendant Meadows, a corrections officer, who asked why he was there. Plaintiff responded that he was assigned to work in the kitchen, which defendant confirmed later with the kitchen stewards. Later, as defendant Meadows was letting another inmate into the kitchen from the

side entrance, plaintiff[1] commented to another inmate that Meadows was engaged in "racial profiling." Hearing the remark, Meadows approached the group of inmates and asked who made the statement. When no one responded, Meadows signaled for plaintiff to come aside to speak to him. Meadows asked plaintiff if he made the statement, but plaintiff denied it. Meadows then said, "I don't owe you or your people a damn thing," and "You want to see something racial?" Meadows then pushed plaintiff against the wall to be searched and handcuffed. (Meadows Affidavit, Doc. 14, Exhibit 1). Plaintiff resisted, grabbing hold of Meadows.[2] (Crook Affidavit, Doc. 17, Exhibit 1, and Lawrence Affidavit, Doc. 17, Exhibit 3). The two men began to "tussel [sic] with one another." (Harkness Affidavit, Doc. 17, Exhibit 2). Plaintiff attempted to break Meadows' grip on him, and he blocked Meadows' attempt to knee him to the floor. The men fell to the floor, with Meadows on top of plaintiff, his knees pinning plaintiff's shoulders down. Meadows alternately choked plaintiff and "gouged his eyes" until other officers arrived and pulled Meadows off the plaintiff. (Plaintiff's Affidavit, Doc. 17, Exhibit 5). Plaintiff was then escorted to the infirmary for a medical examination, which found that he suffered a one-and-a-half centimeter abrasion under his left eye and a one-half centimeter abrasion on his neck. (Body Chart, Doc. 17, Exhibit 4).

## EIGHTH AMENDMENT EXCESSIVE FORCE

To prevail on a Eighth Amendment claim of excessive force in the prison context, the plaintiff come forward with evidence showing that Meadows use of force was not a good faith effort to restore or maintain order, but was maliciously and sadistically used for the very purpose of

---

[1] Although plaintiff's affidavit states the "somebody" yelled out "racial profiling," in the affidavit of Gregory Harkness, offered by the plaintiff (Doc. 17, Exhibit 2), Harkness says that plaintiff made the statement to him.

[2] In a subsequent disciplinary hearing, plaintiff apparently testified that "He [Meadows] said I was trying to start something, racial, and then slammed me to the wall, and then I slammed him into another wall,...." (Disciplinary Report, Doc. 14, Exhibit 6).

4

causing harm. The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 112 S. Ct. at 999.

In order to establish a claim for violation of the Eighth Amendment by the defendant in his *personal* capacity, the plaintiff must show more than unreasonable or even unnecessary force; he must show that the force used against him was done so maliciously and sadistically for the very purpose of causing harm, and not for any legitimate penalogical reason. As the court of appeals recently explained:

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting only as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992).
>
> * * *
>
> Five factors relevant to ascertaining whether force was used "maliciously and sadistically" for the purpose of causing harm include (1) the extent of the injury, (2) the need for application of force, (3) the relationship between the need and the amount of force used, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. *Campbell* [*v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)].

5

> Furthermore, we have explained that, "once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation." *Williams v. Burton*, 943 F. 2d 1572, 1576 (11th Cir. 1991). Indeed, "[o]nce restraints are initially justified, it becomes somewhat problematic as to how long they are necessary to meet the particular exigent circumstances." Id. at 1575. However, if force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended "to reduce the incidence of riots and other breaches of prison discipline." Id. at 1576.

*McBride v. Rivers*, 170 Fed. Appx. 648, 655-656 (11th Cir., March 14, 2006). Additionally, there must be more than a mere "*de minimis*" injury, although the injury need not be "significant." The Supreme Court itself introduced this somewhat slippery standard in *Hudson v McMillian*, saying:

> The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" Whitley, 475 U.S., at 327, 106 S. Ct., at 1088 (quoting Estelle, *supra*, 429 U.S., at 106, 97 S. Ct., at 292) (internal quotation marks omitted).

*Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992); *see Boxer X v. Harris*, 437 F.3d 1107 (11th Cir. 2006), and *McBride v. Rivers*, 170 Fed. Appx. 648, 655-656 (11th Cir., March 14, 2006).[3]

The instant case presents the same problem raised in *McBride*, that is, whether the undisputed evidence shows the malicious *and sadistic use of force by the defendant in violation of the Eighth Amendment. The court believes that it does not*. First, it was legitimate for Officer Meadows to be concerned about comments suggesting racial discrimination. Prisons are harsh places where the

---

[3] It can be argued that the Supreme Court was referring to the degree of *force* used, not the resulting injury. For example, a shove or push, while force, is a minor or *de minimis* level of force. Nonetheless, the court of appeals has consistently spoken of the *de minimis* "injury," focusing on the harm rather than the level of force causing the harm.

ever-present threat of racial violence makes it imperative for prison officials to reduce racial tensions. For this reason, inquiring about a "racial" remark by plaintiff was a legitimate effort to maintain order. Further, based on his belief that plaintiff made the statement, Officer Meadows could reasonably conclude that it was necessary to remove plaintiff from the crowd of inmates waiting in the hall to prevent him from inciting further racial tension. There is a question of fact, however, as to whether Meadows' use of force in pushing plaintiff against the wall to be searched and handcuffed was a legitimate and reasonable response to a perceived need to take action to maintain order.

When plaintiff resisted — grabbing hold of Meadows, attempting to break Meadows grip on him, and "tussling" with Meadows — the need for a degree of force began. Meadows' further use of force was directly precipitated by plaintiff's subsequent resistance to authority. Given the grave threat that inmate resistance poses to the safety of corrections officers, the need for force at that stage was apparent, and the degree of force used to subdue plaintiff was reasonable. Finally, prison officials tempered the severity of Meadows' forceful response by taking plaintiff immediately to the infirmary for treatment,[4] where he was diagnosed with minor injuries.

---

[4] The Eleventh Circuit explained recently that the analytical factor dealing with "efforts to temper a forceful response," is concerned not with limitations or restraints on the force used, but efforts *after* the force is applied to provide treatment or care for injuries. In *Fennell v Gilstrap* Slip Opinion, No. 08-12553 (11th Cir., Feb. 27, 2009), the court of appeals explained:

> Fennell misunderstands the thrust of this factor, and he attempts to reargue that Gilstrap's use of force was disproportionate to the amount of force needed. This factor allows the court to take into account efforts by the police to mitigate the *effects* of the force that was applied. [Emphasis added].

*Id*. at ____. The court then cited *Cockrell v Sparks*, 510 F.3d 1307 (11th Cir. 2007), and *Danley v Allen*, 540 F.3d 1298 (11th Cir. 2008), as examples of cases in which post-force medical assistance was considered as favorable under this factor.

Balancing all five of these analytical factors under *Hudson*, the undisputed facts establish that Meadows' ultimate use of force did not violated the Eighth Amendment, as it was a legitimate and reasonable effort on his part to maintain and restore order. Consequently, because the undisputed facts fail to show a constitutional violation, the defendant's motion for summary judgment is due to be granted and this action dismissed.[5]

An appropriate order will be entered.

DONE this 27th day of March, 2009.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[5]This court does not condone in any way the alleged remarks of Meadows in saying "You want to see something racial?" and pushing plaintiff against the wall. Considering, however, the *de minimis* nature of the injury and the lack of evidence that the initial force was designed to cause harm, the court concludes that the evidence is not sufficient to establish an Eighth Amendment violation. Whether there should be other discipline is not up to this court.